DWIGHT LOOMIS *vs*. WALDO S. KNOX AND OTHERS.

Hartford Dist., March T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR,
TORRANCE AND FENN, JS.

*A* held a mortgage on the homestead of *B*. Later *C* obtained a judgment
against *B* and filed a judgment lien on the homestead and on a pasture
belonging to *B*. Later *A* obtained a decree of foreclosure of his mort-
gage of the homestead, not making *C* a party. After the foreclosure
took effect *A* conveyed the homestead by a warranty deed to *D*. *C* af-
terwards foreclosed his lien on the pasture and took possession of it,
the value of the pasture being greater than the judgment debt. After-
wards *B* conveyed all his interest in the homestead to the plaintiff.
Held that the plaintiff had a right to redeem the homestead from *D*,
the grantee of *A*.

A judgment lien is a mortgage, and the lienor has all the rights of a mort-
gagee.

By virtue of his judgment lien *C* had the right of a second mortgagee to
redeem the homestead mortgaged to *A*, which right was not cut off by
the foreclosure of *B*, *C* not having been made a party.

There was left in *B* an equity by virtue of which he could redeem the judgment lien upon the homestead held by *C*, and by redeeming that judgment lien he would acquire the same right to redeem the first mortgage which *C* had.

And being possessed of such right he could convey it by any proper deed to the plaintiff.

The taking possession of the pasture by *C* under his foreclosure was the payment of the debt for which it had been a security, the land being of greater value than the amount of the debt. It paid the debt in the same way that a payment in money would have done.

This payment of the debt which *B* owed to *C* was a redemption of the judgment lien on the homestead, and clothed *B* with a right to redeem the first mortgage from *A*.

The deed from *B* to the plaintiff of all his right in the homestead would not have been rendered void by the possession of *A* under his foreclosure or of *D* as his grantee, if they had been in full possession. In giving the deed *B* simply passed to the plaintiff the right to redeem which he had acquired through *C*, and the possession of *A* would not have been adverse to the title of *C* as a second mortgagee.

If a mortgagee refuses to receive his money on tender after forfeiture, he will lose the interest upon it from the time of the tender.

[Argued March 6th—decided April 20th, 1891.]

SUIT for the redemption of mortgaged premises; brought to the Superior Court in Hartford County, and heard before *Fenn, J.* Facts found and judgment rendered for the plaintiff and appeal by the defendants. The case is sufficiently stated in the opinion.

*A. F. Eggleston* and *J. P. Andrews,* for the appellants.

1. The right to redeem mortgaged property is confined to those who have some legal or equitable interest therein. 2 Jones on Mortgages, § 1055.

2. Loomis acquired no such interest by the conveyances of February 24th, 1890. Harris had nothing to convey. He had foreclosed Wright, had obtained title absolute to the "pasture," and had thereby extinguished his claim. He no longer sustained any relation whatever to Wright or to Knox Brothers. "But in Connecticut it has long been considered as established law, and has so been repeatedly decided, that the taking of possession of mortgaged premises by the mortgagee under a decree of foreclosure is by operation of law an extinguishment of the mortgage debt.

Loomis v. Knox.

It is deemed an appropriation of the thing pledged in payment of the demand for which it was a security." 2 Rev. Swift's Dig., 219; 2 Jones on Mortgages, § 950. As the land appropriated in this case (the pasture) was worth nearly three times the debt, there can be no question that the debt was "extinguished." If the debt was extinguished by this appropriation of the pasture in which Knox Brothers never had any interest at all, it is clear that Harris could not subsequently redeem the homestead. The effect of taking land under a foreclosure decree is, for all practical purposes, the same as taking it upon an execution. In other words, after title absolute, under a decree or after a levy of execution, the creditor no longer holds any relation whatever to the debtor. *Allyn* v. *Burbank,* 9 Conn., 151. It is true there was still outstanding on the land records a lien in favor of Harris upon the homestead, but as that lien was to secure the same debt that had become extinguished by an appropriation of the pasture, it thereafter ceased to have any virtue, and was and is a mere cloud on the title. This cloud on the title is the foundation of the plaintiff's claim. Upon it rests his whole case. How utterly unsubstantial it is a moment's reflection will show. Knox Brothers had foreclosed Wright, and he, having failed to redeem, their title to the homestead had become absolute. With the pasture they had nothing to do. They then discovered that Harris had placed a lien on the homestead as well as on the pasture. It would have been easy for them to have then gone to the Court of Common Pleas, and had the lien on the homestead discharged, on the ground that the lien on the pasture afforded Harris ample security for his debt of $180. Gen. Statutes, § 3039. But they discover that Harris does not care to assume the burden of redeeming the $5,300 mortgage upon the homestead, and has abandoned that lien and resorted to his lien on the pasture alone. This constituted a waiver or abandonment of his lien on the homestead. Neither a lien nor a mortgage can be the subject of several different foreclosure suits. If a mortgagee enforces his mortgage upon one piece only of the mortgaged property,

he thereby waives his lien on the remainder. 2 Jones on Mortgages, § 1463; *Mascarel* v. *Raffour*, 51 Cal., 242. Harris, therefore, had no interest in the homestead on February 24th, 1890, and his deed to Loomis conveyed nothing. But, aside from this, Loomis took nothing. If the original debt due from Wright to Harris can, upon any construction or theory, be regarded as still outstanding, the owner of that debt alone had the right to redeem Knox Brothers. Harris had assigned that debt to Austin months previous to February, 1890, and that debt, if any there was, is still owned by Austin. He was careful to exclude it in the assignment made to Loomis on February 24th, 1890. The law is well settled that the owner of the debt is entitled to the security—that a mortgagee cannot, by assignment, divorce the debt and its security. If there is any right still to redeem, it certainly is in Austin as the owner of the debt. *Huntington* v. *Smith*, 4 Conn., 235; *Bulkley* v. *Chapman*, 9 id., 5. If Harris had not previously assigned the debt to Austin, and if Austin had not carefully excluded the debt in his assignment to Loomis, there might be some reason for claiming that an assignment of the lien was intended to cover and carry the debt. As it is, however, the intent is too plain to admit of any such inference or construction.

3. But the counsel for the plaintiff say that Wright had the right to redeem from Knox Brothers on February 24th, 1890, and that this right passed to Loomis by the quitclaim deed of that date. Their claim is that a second mortgagee not foreclosed by the first mortgagee, may redeem the first mortgage, and then that the mortgagor may redeem the second mortgage, and thus acquire a new right to redeem the first mortgage, although such mortgage has already been foreclosed and the title become absolute in the first mortgagee. It may be questionable whether a lienor stands upon the same ground as a mortgagee. He has no title from the owner of the land, and no contract concerning the land exists between them. But assuming, for the sake of the argument, that a lienor is a mortgagee, does it follow, under the facts disclosed by the finding, that Wright, on the 24th of

February, 1890, had a right to redeem the Knox mortgage? The plaintiff maintains that this privilege existed in Wright under the decision in *Goodman* v. *White*, 26 Conn., 317. That case is utterly unlike the case at bar in every material point. The only question for decision there was, (as stated by STORRS, C. J.), "whether a mortgagee, having foreclosed a mortgagor without pursuing a like remedy against a subsequent mortgagee, has the right of redeeming the interest of the latter in the mortgaged premises, upon paying the debt secured by the subsequent mortgage." That question has no relevancy to the question in this case. Knox Brothers having foreclosed Wright, the mortgagor, without pursuing a like remedy against Harris, a subsequent mortgagee, are not here asking the right of redeeming anybody. They do not admit that any one but Wilson had any right or interest in the premises after February 5th, 1890. But the counsel for the plaintiff insist that the language of the opinion, in the cases cited, applies to this case. We do not see the application. In its opinion the court say that a foreclosure of the mortgagor by the first mortgagee does not affect the right of the mortgagor to redeem the second mortgage. With that doctrine we can have no quarrel. The trouble with the plaintiff's position lies in the facts. Wright had been foreclosed by both mortgagees, and the title of each had become absolute by his failure to redeem either. The court in *Goodman* v. *White* expressly say that if, in addition to a foreclosure by a first mortgagee, there is also a foreclosure by the second mortgagee, the right of the mortgagor is gone. And that is what the facts show took place in the case at bar. But in *Colwell* v. *Warner*, 36 Conn., 233, the court held that when the second mortgagee had foreclosed, the mortgagor could not redeem the first mortgage.

4. The court erred also in holding that a tenant of Knox Brothers, or of Wilson, as Wright admitted he was, had such possession as would enable him to pass a title to Loomis. Gen. Stat., § 2966; *Harral* v. *Leverty*, 50 Conn., 46; *Sherwood* v. *Waller*, 20 id., 262; *Sherwood* v. *Barlow*, 19 id., 471; 2 Jones on Mortgages, § 1258. If a mortgagor remains

in possession of the mortgaged premises after a decree of foreclosure, and the expiration of the time for redemption, he is a tenant at sufferance of the mortgagee or his assignee. *Ex'rs of Tucker* v. *Keeler*, 4 Verm., 161. A mortgagor cannot set up an adverse claim against his mortgagee until he has first surrendered the possession; and all who claim under him are tenants, subject to the same rule, whether they know of the relationship or not. *Reed* v. *Shepley*, 6 Verm., 602.

5. The court erred in holding that the alleged tender to Waldo S. Knox stopped the running of interest in favor of the plaintiff. Knox Brothers at the time of this alleged tender had no interest in the homestead, as the plaintiff well knew. Not only was the record of Wilson's deed on February 5th, 1890, constructive notice to them, but they had actual notice, as the finding shows, a week before this alleged tender. The fact that Knox Brothers, on February 5th, 1890, gave Wilson a warranty deed of the homestead, is of no consequence in this case or at this time. Loomis can derive no benefit from it in a suit to redeem.

6. The court also erred in rendering judgment against Knox Brothers. Not owning or claiming to own the property they cannot give a deed of it. They are in no respect interested in this suit. All that the mortgagor can claim on a bill to redeem is to have the mortgage canceled, and if the trial court goes further, and directs a conveyance of the premises to the mortgagor, that part of the decree will be reversed. *Merriam* v. *Barton*, 14 Verm., 500.

*C. E. Perkins* and *L. N. Austin*, for the appellee.

ANDREWS, C. J. This is a complaint praying to redeem certain mortgaged premises situated in the town of Suffield.

Prior to the 8th day of December, 1883, Halsey J. Wright was the owner of two tracts of land in that town, one called the homestead and the other the pasture. On that day he mortgaged the homestead to the defendants, Waldo S. and Wallace Knox—who are spoken of throughout the case as Knox Brothers—to secure his note for the sum of four thousand dollars and interest. On the 9th day of May, 1888,

Chauncey S. Harris, having obtained a judgment against Wright for the sum of one hundred and eighty dollars, including costs, placed a judgment lien therefor on the homestead, and on the fifth day of June following caused another lien to be placed on the pasture to secure the same judgment debt. On the 4th day of April, 1889, Knox Brothers obtained a decree for the foreclosure of the homestead, the time limited for the redemption being the 13th day of August, 1889. Harris was not made a party to the foreclosure and had no notice thereof. On the 5th day of February, 1890, Knox Brothers conveyed the homestead by a warrantee deed to Allen Wilson, who is the other defendant in the case.

Harris foreclosed his lien on the pasture, obtained title thereto, and took possession thereof on the 20th day of January, 1890. The pasture was of a value more than sufficient to pay the entire debt which Wright owed to Harris and all costs. Harris on said 20th day of January assigned all his interest in his judgment to Leverett N. Austin. On the 24th day of February, 1890, both Austin and Harris assigned all the remaining interest, if any, which they or either of them had in the judgment, to the present plaintiff; and on the same day Wright conveyed to the plaintiff all his right, interest and estate in the homestead. On the 8th day of March, 1890, Wright was put out of the possession of the homestead upon a judgment in ejectment obtained by Knox Brothers. On the 5th day of March, 1890, the plaintiff through his attorney tendered to Waldo S. Knox the sum of $5,650, that being the full amount due to Knox Brothers on the note of Wright, with all interest and costs. Knox refused to accept it. This action was brought on the 10th day of March, 1890. These are the controlling facts in the case.

The Superior Court passed a decree allowing the plaintiff to redeem, found the value of the use and occupation of the premises, and required the defendants to execute and deliver to the plaintiff a release deed and to surrender to him the peaceable possession thereof. The defendants appeal.

All the reasons of appeal are disposed of by answering

two questions. Did Wright himself have a right to redeem the homestead at the time he made the deed to the plaintiff? And if so, was that deed a sufficient one to authorize the plaintiff to redeem? If both these questions can be answered in the affirmative then there is no error. These questions imply, and we think the law is so, that whatever the power or privilege to redeem the plaintiff has must come from Wright. He obtained no such right from Harris or Austin.

It was decided by this court in *Beardsley* v. *Beecher*, 47 Conn., 408, that a judgment lien is a mortgage—a statutory mortgage. It therefore confers just such rights on the lienor as a mortgage would confer. The rights of the parties in this action are to be determined in the same way that they would be if Wright had made a second mortgage of the homestead to Harris on the 9th day of May, 1888, and on the 5th day of June of the same year had given a mortgage of the pasture as additional security to Harris for the same debt. By virtue of such a second mortgage Harris had the right to redeem the first mortgage held by Knox Brothers. The foreclosure of Wright, the mortgagor, by Knox Brothers,—Harris not being a party to that proceeding—did not cut off the right of Harris to redeem the first mortgage. His right to redeem that mortgage was left unimpaired. *Beers* v. *Broome*, 4 Conn., 247; *Smith* v. *Chapman*, id., 344; *Swift* v. *Edson*, 5 id., 531; *Mix* v. *Cowles*, 20 id., 427; *Thompson* v. *Chandler*, 7 Maine, 377; *Moore* v. *Beasom*, 44 N. Hamp., 215. There was also left in Wright an equity by virtue of which he could redeem the second mortgage owned by Harris, and by so doing would acquire the same right to redeem the first mortgage which Harris had, and become entitled himself to redeem that mortgage. *Goodman* v. *White*, 26 Conn., 317; *Colwell* v *Warner*, 36 id., 224; Jones on Mortgages, § 1057. If Wright became possessed of such a right to redeem the homestead, he might of course convey it by any proper deed to the plaintiff. It is just that right which the plaintiff claims to be exercising in this action. The first question then comes to this :—Do the

facts show that Wright did redeem the second mortgage on the homestead from Harris?

The taking possession of the pasture by Harris under his foreclosure was the payment of the debt for which it had been a security, the land being of greater value than the amount of the debt. *Bassett* v. *Mason*, 18 Conn., 131. It paid that debt in the same way that a payment in money would have done.

A payment by Wright of the debt he owed to Harris was a redemption of the second mortgage on the homestead and clothed Wright with a lawful claim by which he could redeem the first mortgage from Knox Brothers. As between Harris and Wright it can make no difference whether the debt was paid in money or was paid by the foreclosure of land. The debt was paid in either case. The second mortgage was redeemed in either case, and in either case the incidents of such redemption must follow, namely, the right to redeem the first mortgage.

It is claimed that the deed from Wright to the plaintiff is void for the reason that he was ousted of possession at the time it was given. The dates show that at the time he was still on the homestead. He was not put out till some days after. But the objection vanishes when it is remembered that in giving the deed Wright simply passed to the plaintiff the right to redeem which Harris had. As to that right if Harris was not ousted Wright was not. There is nothing in the case to show, nor is there any claim made, that Harris was ousted. The possession of Knox Brothers was not adverse to the title of Harris nor to any grantee of his title.

Knox Brothers may rightfully claim to have the full amount of their note with interest and all costs. Beyond that there are no equities in their favor. In their brief and in the oral argument it is intimated that the plaintiff is attempting in some way to do injustice to Wright. If that is so it does not entitle them to have anything more than their just dues. They may not do wrong to Wright because some one else is seeking to do so.

We understand the law to be as laid down in 2 Swift's Digest, 210, that if a mortgagee refuses to receive his money on tender after forfeiture, he will lose his interest from the time of the tender.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.